UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL GEBRESELASSIE,

Plaintiff,

v.

DEPUTY BALDWIN and KING COUNTY,

Defendants.

Case No. 10-cv-701-JCC-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court upon the parties' cross-motions for summary judgment in this 42 U.S.C. § 1983 civil rights action. Dkt. 17; Dkt. 28. Plaintiff Daniel Gebreselassie, a state prisoner proceeding *pro se* and IFP, is currently confined at the Monroe Correctional Complex ("MCC") in Monroe, Washington. He filed this § 1983 action against King County Sheriff's Department Deputy Korey E. Baldwin ("Deputy Baldwin") and King County following his October 23, 2007 arrest for investigation of automobile theft as well as an outstanding warrant for misdemeanor drug possession. Dkt. 7; Dkt. 9. Plaintiff alleges that Deputy Baldwin violated his federal constitutional rights under the Fourth and Fourteenth Amendments by filing a false and misleading incident report which resulted in plaintiff's false arrest, and that King County is liable for failing to properly train and supervise Deputy Baldwin. Dkt. 9 at 5-6. Plaintiff also asserts state law claims for conversion and tortious

interference with contract against both defendants, based upon the seizure and subsequent release of plaintiff's vehicle to an alleged purchaser. *Id.* at 6.

The defendants filed a motion summary judgment seeking dismissal of all of plaintiff's claims. Dkt. 17. Plaintiff then filed a "Response to Defendants' Motion for Summary Judgment and Plaintiff's Counter-claim for Summary Judgment," Dkt. 28, to which the defendants have replied. Dkt. 29; Dkt. 30. The Court, having reviewed the pending motions, the governing law, and the balance of the record, recommends that the defendants' motion for summary judgment be GRANTED, and that plaintiff's motion for summary judgment be DENIED and this action DISMISSED with prejudice.

## II. JURISDICTION

This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1983, and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). As all claims arose in King County, Washington, venue is proper pursuant to RCW 4.12.020.

## III. BACKGROUND

### A. Factual History

The facts in this case, as set forth by the defendants' declarations, are uncontroverted by the plaintiff. *See* Dkt. 28 at 1-4 (plaintiff's "statement of facts"). On October 9, 2007, Deputy Baldwin responded to a 911 call by Mr. Germany T. Ford, who reported that his 2000 Cadillac Seville had been stolen from his residence on October 6, 2007, between six p.m. and midnight. *See* Dkt. 23 at 2 (Baldwin Decl.). Mr. Ford reported that he had decided to purchase the Cadillac from plaintiff Gebreselassie after finding the car on the internet and meeting with plaintiff on several occasions to look at the car. Mr. Ford and plaintiff agreed on a price of $4,650, but when they went to the Department of Motor Vehicles on September 27, 2007, they learned that they could not change the title to Mr. Ford's name until an emissions test had been

completed. Mr. Ford gave plaintiff $3,950 with the understanding that he would pay the remaining $700 after the title was completed, and then took possession of the car. *See id.* When the Cadillac went missing, Mr. Ford did not immediately report the theft because he had not yet paid plaintiff the remaining $700 balance, and he suspected that plaintiff may have retaken the Cadillac. *See id*. Mr. Ford completed a King County Sheriff's Victim Statement Stolen Vehicle Report regarding the case, which included certifying under penalty of perjury that he did not give anyone permission to take, drive, possess, or utilize the vehicle in any way. *See id*. at 2-3. In addition, Mr. Ford was advised that the consequence of filing a false report may include being charged with making a false or misleading statement to a public servant. *See id*, Ex. 1 (Germany T. Ford's Victim Statement Stolen Vehicle Report).

Mr. Ford provided Deputy Baldwin with plaintiff's cell phone number, and Deputy Baldwin called plaintiff in order to investigate Mr. Ford's allegations. During Deputy Baldwin's conversation with plaintiff, "Mr. Gebreselassie denied knowing anything about the vehicle. He then said to [Deputy Baldwin], 'If you are going to arrest me, then arrest me.'" *Id*. at 2 (Baldwin Decl.). Although plaintiff stated his address quickly, Deputy Baldwin was unable to copy it down before plaintiff hung up the phone. *See id*. After talking to the plaintiff, Deputy Baldwin checked the vehicle identification number ("VIN") on the Cadillac, which did not have license plates. Deputy Baldwin learned that the Cadillac was registered out of the State of Oregon to a Mr. Larry Howard. *See id*. at 3. Although Deputy Baldwin attempted to contact Mr. Howard by calling the phone number listed on the State of Oregon Power of Attorney form, his efforts were unsuccessful.[1] *See id.*

---

[1] According to the investigative records of Seattle Police Department Detective Quinonez, Mr. Howard had traded in the Cadillac to the Sherrell Chevrolet of Hermiston, Oregon on March 28, 2007. Sherrell Chevrolet then sold the car to Christopher Car City in Milwaukee, Oregon on June 28, 2007, which auctioned the car to the Amhaz Car Company of Tigard, Oregon. Plaintiff purchased the car from the Amhaz Car Company for $4,000 on August 5, 2007. *See* Dkt. 28 at 14.

Deputy Baldwin then prepared a King County Sheriff's Department Incident Report # 07-300276, which documented the facts set forth above and specifically noted that Mr. Ford "was still in the process of purchasing the vehicle" from the plaintiff and "still owed him the remaining $700" of the agreed purchase price at the time the Cadillac disappeared. Dkt. 28 at 12-13. Under "suspect trademarks," the report stated that the victim was "in the process to purchase vehicle and vehicle was stolen." *Id*. at 12.[2] Deputy Baldwin attached Mr. Ford's Victim Statement Stolen Vehicle Report and forwarded the case to the department's detectives for follow up. *See id*. Deputy Baldwin had no further contact with the plaintiff, or involvement in the case. Dkt. 9 at 4.

In the early morning hours of October 23, 2007, Seattle Police Officer Stephen Hirjak arrested plaintiff for investigation of automobile theft of the 2000 Cadillac Seville as well as an outstanding warrant for misdemeanor drug possession. *See* Dkt. 24, Ex. 1 (Hirjak Decl.). When plaintiff was booked into the King County Correctional Facility, Officer Hirjak filed a Superform that included the following "Statement of Probable Cause" describing the circumstances of plaintiff's arrest:

> I was checking suspicious activity at the Fremont Inn (4251 Aurora Ave N). I focused on vehicles and rooms that had heavy foot traffic in and out of them. I noted that a Cadillac with no plates had been in and out of the lot this evening so I checked the VIN and found the vehicle was reported stolen under King County Sheriff's case # 07-300276. I spoke with the motel asst. manager who said that he'd seen people go in and out of room 14 and the car. I asked him to tell the occupants of 14 that the car should be moved to ascertain who was driving the stolen vehicle. He did and the defendant exited the room, entered the vehicle, started it and began backing it out of the lot. Two other officers and I stopped and arrested him. He stated he had purchased the vehicle from someone in Oregon and provided paperwork to support this argument showing that he purchased it in August 2007. Officer Elias contacted King County Sheriff operator 99

[2] Defendants seek to strike the Incident Report at issue as "inadmissible hearsay." Dkt. 29 at 3. The motion is denied.

> who read the report and explained that the report read that the defendant sold the car to the reporting party and stole it back after the sale.

Dkt. 24, Ex. 1. Plaintiff was brought before the court and a finding of probable cause was made later that morning. Plaintiff was then released from custody. *See* Dkt. 17 at 2.

On October 31, 2007, plaintiff called King County Sheriff's Department Detective Dennis M. Shibley, who works in the Property Crimes Department. *See* Dkt. 18 at 1-2 (Shibley Decl.). Plaintiff informed Detective Shibley that he had sold the Cadillac to Mr. Ford, but later took back the vehicle because Mr. Ford had failed to pay in full. *See id.* at 2. Detective Shibley "informed Gebreselassie that he should have gone through the proper 'repossession process' to lawfully obtain the vehicle back for nonpayment." *Id.* According to the King County Sheriff's Department Follow-up Report and Seattle Police Department records, Seattle Police Detective Quinonez released the 2000 Cadillac Seville to Mr. Ford following Mr. Ford's presentation of the written bill of sale from plaintiff to Mr. Ford. Dkt. 28 at 14-15; Dkt. 9 at 4. Title to the Cadillac was released to plaintiff. Dkt. 28 at 15. After advising plaintiff that he "may want to obtain the proper paperwork to repossess the vehicle [from Mr. Ford] but the proper paperwork is NEEDED," Detective Shibley closed case # 07-300276 "with an exception clearance because it is a civil problem. NO crime has been committed." *Id.*

B. Procedural History

Plaintiff filed this § 1983 action on May 19, 2010. Dkt. 7. The Court initially declined to serve plaintiff's complaint, and granted plaintiff leave to file an amended complaint by no later than June 21, 2010. Dkt. 8. Plaintiff filed the instant amended complaint on June 9, 2010, and the Court directed service on defendants Deputy Baldwin and King County. Dkt. 9; Dkt. 10. Defendants filed their answer to the amended complaint on August 27, 2010. Dkt. 14. Defendants also filed their motion for summary judgment seeking denial of all of plaintiff's claims on November 19, 2010. Dkt. 17. Because several declarations filed in

support of the defendants' motion contained unredacted personal data identifiers in violation of Local Rule CR 5.2(a), the Court sealed the declarations and directed the defendants to file redacted declarations forthwith. Dkt. 22. Defendants complied with the Court's Order, and filed appropriately redacted declarations on December 2, 2010. Dkt. 23; Dkt. 24.

Plaintiff failed to file a response to the defendants' motion for summary judgment by the Court's deadline, which the defendants pointed out in their reply brief. Dkt. 25. However, on December 20, 2010, plaintiff filed a motion seeking an extension of time to respond to the defendants' summary judgment motion because plaintiff's recent transfer from the Washington State Penitentiary to the MCC resulted in a nineteen-day delay in plaintiff's receipt of mail. Dkt. 26. The Court granted plaintiff's motion for an extension of time, Dkt. 27, and plaintiff filed a "Response to Defendants' Motion for Summary Judgment and Plaintiff's Counter-claim for Summary Judgment" on January 19, 2011.[3] Dkt. 28. Defendants filed a reply to plaintiff's response to their summary judgment motion on January 21, 2011, Dkt. 29, and a response to plaintiff's cross-motion for summary judgment on February 1, 2011. Dkt. 30.

C. Plaintiff's Federal and State Law Claims

Plaintiff's amended complaint sets forth the following federal and state law claims:

(1) Deputy Baldwin violated plaintiff's federal constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution "by knowingly falsifying his incident report and stolen vehicle report to represent another person as the owner of my vehicle. Deputy Baldwin was [aware] that there was an ongoing civil contractual dispute going on between myself and a Germany Ford and Deputy Baldwin exceeded his lawfull (sic) authority when he decided to settle the dispute by seizing property he knew to be rightfully,

---

[3] The Court notes that plaintiff's summary judgment motion was filed twenty-one days after the December 29, 2010 dispositive motion deadline. *See* Dkt. 28. However, the defendants do not allege that plaintiff's delay prejudiced their defense in any way. Dkt. 30. Thus, in light of the Court's December 22, 2010 Order granting "plaintiff's motion for an extension of time to prepare a response to defendants' motion for summary judgment in this action," Dkt. 27, the Court will also construe plaintiff's response as a timely cross-motion for summary judgment.

legally, and unquestionably mine." Dkt. 9 at 5-6. Through his actions, Deputy Baldwin caused plaintiff "to be arrested [by Seattle Police] while driving my own vehicle." *Id.* at 4.

(2) King County violated plaintiff's federal rights by "[f]ailing to properly train and supervise Deputy Baldwin. Deputy Baldwin had many contradictory and clearly false statements in his report that would have been easily spotted had he been properly supervised. In addition if Deputy Baldwin had been properly trained on resolving contractual disputes it would have greatly reduced the chance that my injury would have occurred." *Id.* at 6.

(3) Deputy Baldwin is liable under state law for committing the torts of conversion and tortious interference with contract. *See id.*

(4) King County is also liable for "conversion, unlawfull (sic) arrest and unlawfull (sic) interference with contract . . . under the theory of respondeat superior. Being Deputy Baldwin's employer his actions are essentially [attributable to] his employer[.]" *Id.*

## IV. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving


party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. *Standard for Qualified Immunity*

In order to sustain an action under § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A court considering a claim of qualified immunity must determine (1) whether the facts shown "make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct," such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009) (overruling its prior holding, in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that courts had to proceed through the two-step inquiry sequentially). "If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did," such questions of fact are for the jury to determine, and, consequently, summary judgment on the issue of qualified immunity cannot be granted. *Sinaloa Lake Owners Assn. v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).

C. *Deputy Baldwin Did Not Violate Plaintiff's Federal Constitutional Rights*

Plaintiff alleges that his arrest on October 23, 2007, violated his Fourth Amendment right to be free from unreasonable seizure, because it was not supported by probable cause. Plaintiff acknowledges that Deputy Baldwin did not arrest him, but asserts that he was arrested as a result of information contained in incident and stolen vehicle reports that Deputy Baldwin either prepared or submitted to the King County Sheriff's Department. Specifically, plaintiff contends that "[i]n October 2007 Deputy Baldwin, while acting under color of state law, used his position as a King County Sheriff's Deputy to deprive me of my fourth and fourteenth amendment rights when he filed an incident report and stolen vehicle report that he knew to be false and misleading. In doing so he caused me to be arrested [by the Seattle Police Department] while driving my own vehicle." Dkt. 9 at 4. In plaintiff's summary judgment motion, he summarily concludes that Deputy Baldwin "decided that Mr. Ford's interest in the vehicle outweighed Gebreselassie's interest and he would act arbitrarily to enforce Mr. Ford's

interest." Dkt. 28 at 7-8. In support of his argument that Deputy Baldwin should be held liable for his arrest, plaintiff cites the Ninth Circuit's decision in *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978), for the proposition that "personal participation in the deprivation is not required for imposition of liability [under § 1983] but setting in motion a series of events or acts by others which the actors knows or reasonably should know would cause others to inflict the constitutional injury imposes liability for that injury." Dkt. 28 at 6-7. Plaintiff was ultimately "released without any charges and . . . [to date has] not been charged with a single crime relating to this arrest." Dkt. 9 at 4.

The defendants assert that probable cause to arrest plaintiff on investigation of automobile theft was clearly established in this case. *See* Dkt. 17 at 7. Specifically, Deputy Baldwin submitted Mr. Ford's Victim Statement Stolen Vehicle Report, which included Mr. Ford's statement, under penalty of perjury, that he had not given anyone else permission to take or drive the Cadillac. Dkt. 17 at 7; Dkt. 23, Ex. 1. Plaintiff also "denied knowing anything about the car in question" when Deputy Baldwin spoke with him by phone. Dkt. 17 at 7. Finally, "Deputy Baldwin learned the Cadillac did not have plates and that the VIN number did not support Gebreselassie's ownership of the car." *Id*. Defendants argue that based upon "these facts, an objective, reasonable officer 'could have believed' that probable cause existed to arrest Gebreselassie for auto theft." *Id*. Finally, defendants assert that plaintiff's contentions relating to the release of the Cadillac to Mr. Ford by the Seattle Police Department "based upon reasonable information that he was the legal owner" are not viable claims against Deputy Baldwin, as "Deputy Baldwin had nothing to do with the release of the Cadillac." *Id*. at 8.

"An arrest is supported by probable cause if, 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (quoting *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th

Cir. 2002)). "A police officer has probable cause to effect an arrest if at the moment the arrest was made . . . the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had violated a criminal law." *Grant*, 315 F.3d at 1085 (internal quotation marks omitted). *See also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009). "Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). The existence of probable cause is a complete defense to a claim for false arrest under 42 U.S.C. § 1983. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008).

At the outset, the Court notes that although plaintiff alleges that Deputy Baldwin made "false and misleading statements" in King County Sheriff's Department Incident Report #07-300276, plaintiff does not actually appear to contest any of the facts set forth in that report.[4] Specifically, plaintiff does not identify any specific inaccuracies, or argue that the terms of his agreement with Mr. Ford differed in any respect from what Mr. Ford reported to Deputy Baldwin. Consistent with plaintiff's statement of facts, Deputy Baldwin's report provides that Mr. Ford "was still in the process of purchasing the vehicle from [plaintiff]" and owed plaintiff $700 of the agreed-upon purchase price at the time the car went missing. Dkt. 28 at 3, 12. It therefore appears that the crux of plaintiff's federal constitutional claim is not that Deputy Baldwin's Incident Report was false, but that the information set forth in that report was

---

[4] Plaintiff's version of the facts appears to differ from Deputy Baldwin's report only to the extent that plaintiff remembers "telling Deputy Baldwin that he could arrest him if he wanted but he could not intimidate him into waiving his Fifth Amendment right" before hanging up the phone. Dkt. 28 at 4. Plaintiff also points out that Deputy Baldwin does not report that Mr. Ford provided a "contract or written agreement verifying of corroborating his version of the oral contract" at the time Mr. Ford first reported the theft of his car. *Id*. at 3. The Court does not find these differences to be material.

insufficient to establish probable cause, i.e., insufficient to warrant a prudent man in believing that plaintiff was guilty of automobile theft. However, plaintiff offers scant evidence to support his claim.

As discussed above, the existence of probable cause is evaluated based upon the knowledge of an arresting officer at "the moment" of a suspect's arrest. *See Grant*, 315 F.3d at 1085. Officer Hirjak, and not Deputy Baldwin, actually arrested plaintiff, and therefore this Court's inquiry under the Fourth Amendment is whether a prudent person in Officer Hirjak's position at the time of the arrest would have concluded that there was a fair probability that plaintiff committed automobile theft, based upon an assessment of the "totality of the circumstances." *See Crowe v. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010). The evidence relied upon by Officer Hirjak to establish probable cause included, but was not limited to, the information contained in the reports submitted by Deputy Baldwin, and plaintiff has not proffered any evidence in these proceedings that the information contained in Deputy Baldwin's reports was either unreliable or legally insufficient to establish probable cause.[5] *See Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (providing that although evidence supporting probable cause need not be admissible in court, it must be legally sufficient and reliable).

Here, the Court finds that plaintiff has failed to establish a genuine issue of material fact regarding whether Officer Hijack had probable cause to arrest plaintiff. As discussed above, Officer Hirjak witnessed plaintiff driving a Cadillac that had been reported stolen, and which had no license plates and a VIN number that was not registered to the plaintiff. In light of the additional information provided in Deputy Baldwin's report and Mr. Ford's Victim Statement Stolen Vehicle Report, a prudent person in Officer Hirjak's position would have

---

[5] Moreover, plaintiff has offered no legal authority, and the Court is aware of none, holding that Deputy Baldwin could be found liable under § 1983 simply for filing an incident report that lacked sufficient probable cause to support an arrest.

concluded that there was a fair probability that plaintiff had committed automobile theft. For example, a reasonable person could have concluded that plaintiff had sold his car to Mr. Ford as a pretense, and that he intended to steal it back after the majority of the purchase price had been paid but before title had been transferred out of plaintiff's name. The fact that plaintiff was not charged with a crime and the case was closed following further investigation by both police departments does not negate the existence of probable cause at the moment of plaintiff's arrest. *See Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Once probable cause is established, arresting officers have no duty to investigate further, and their failure to do so does not negate probable cause. *See Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).

In any event, even if Officer Hirjak did not have probable cause to arrest plaintiff for automobile theft investigation, it is undisputed that Office Hirjak had probable cause to arrest plaintiff on the outstanding drug possession warrant. *See* Dkt. 24, Ex. 1 (Superform completed by Officer Hirjak). The existence of probable cause to support plaintiff's arrest is a complete defense to plaintiff's false arrest claim under 42 U.S.C. § 1983, regardless of whether Officer Hirjak also cited automobile theft investigation as a second basis for the arrest. *See Edgerly*, 599 F.3d at 954; *Harper*, 533 F.3d at 1022.

Finally, it is undisputed that Deputy Baldwin was not involved in either the seizure or release of the Cadillac to Mr. Ford. *See* Dkt. 23 at 3 (Baldwin Decl.). As a result, even assuming that the Cadillac was released to Mr. Ford based entirely upon the information contained in Deputy Baldwin's Incident Report, Deputy Baldwin is not liable for violating plaintiff's federal due process rights by intentionally depriving plaintiff of his property. *See Hudson v. Palmer*, 468 U.S. 517, 533-34, 104 S.Ct. 3194 (1984) (holding that even an intentional deprivation of property by a state employee does not give rise to a violation of the Due Process Clause if adequate state post-deprivation remedies are available, because "the state's action is not complete until and unless it provides or refuses to provide a suitable post[-

]deprivation remedy.”). Plaintiff was advised by Detective Shibley that simply repossessing the Cadillac from Mr. Ford was not a lawful remedy, and that he may initiate a civil cause of action against Mr. Ford pursuant to RCW 9A.56.078. *See* Dkt. 21 at 2 (Shibley Decl.); RCW 9A.56.075 (defining the crime of taking a motor vehicle without permission in the second degree). To date, however, plaintiff has not provided any evidence that he has attempted to pursue this remedy.

As the Court concludes that Deputy Baldwin did not violate plaintiff’s federal constitutional rights, Deputy Baldwin is also entitled to qualified immunity. *See Saucier*, 533 U.S. at 200. This Court need not inquire further. *See Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).[6] Plaintiff has failed to “set forth specific facts showing that there is a genuine issue for trial” on this claim. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The defendants’ motion for summary judgment on the plaintiff’s federal claim against Deputy Baldwin is therefore GRANTED.

D. *King County is Not Liable for Negligent Training or Supervision*

In his complaint, plaintiff alleged that King County is liable under § 1983 for “[f]ailing to properly train and supervise Deputy Baldwin. Deputy Baldwin had many contradictory and clearly false statements in his report that would have been easily spotted had he been properly supervised. In addition if Deputy Baldwin had been properly trained on resolving contractual disputes it would have greatly reduced the chance that my injury would have occurred.” Dkt. 9at 6. However, in plaintiff’s summary judgment motion, he appears to abandon his federal claims against King County. *See* Dkt. 28 at 9-10.

---

[6] Even if probable cause for plaintiff’s arrest was lacking, the Court finds that Deputy Baldwin could have reasonably but mistakenly believed that his conduct was lawful under the circumstances. *See Alexander v. County of Los Angeles*, 64 F.3d 1315, 1319 (9th Cir. 1995) (holding that the appropriate inquiry for determining whether officers are entitled to qualified immunity for a Fourth Amendment violation is “whether reasonable officers could have believed their conduct lawful under the clearly established principles of law governing that conduct.”); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (“Defendants are entitled to qualified immunity for [plaintiff’s] arrest if a reasonable officer could have believed that probable cause existed to [make the] arrest.”).

To prove municipal liability under § 1983, the plaintiff must show that the unconstitutional deprivation of rights arises from a governmental custom, policy, or practice. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality's "policy can be one of action or inaction," although "[b]oth types of claims require that the plaintiff prove a constitutional violation." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). In the absence of a formal policy, plaintiff must identify a "longstanding practice or custom which constitutes the standard operating procedure" that caused his alleged constitutional deprivation, and this practice or custom cannot be "predicated on isolated or sporadic incidents[.]" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Thus, to state a constitutional claim against a municipality, a plaintiff must (1) identify the specific "policy" or "custom," (2) fairly attribute the policy or custom and fault for its creation to the municipality, and (3) establish the necessary "affirmative link" between the identified policy or custom and the specific constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The U.S. Supreme Court held in *Harris* that inadequacy of training may serve as a basis for liability under § 1983 only "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Harris*, 489 U.S. at 392; *see also Waggy*, 594 F.3d at 713. The *Harris* court explained that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390. In resolving the issue of liability, "the focus must be on the adequacy of the training program in relation to the tasks that particular officers must perform." *Id.*

Here, plaintiff has failed to produce any evidence that King County's policies, customs, or practices resulted in any federal constitutional violation, or that the need for Deputy

Baldwin to receive training in resolving "civil contractual disputes" is so obvious that King County's failure to adequately train Deputy Baldwin on this subject constitutes deliberate indifference to plaintiff's constitutional rights. *See Harris*, 489 U.S. at 392. Accordingly, the defendants' motion for summary judgment on plaintiff's federal claims against King County is GRANTED.

   E. *Plaintiff's Pendant State Law Claims Against Deputy Baldwin and King County*

Plaintiff's remaining state law claims allege that the defendants are liable for the torts of conversion and unlawful interference with contract. *See* Dkt. 9 at 6. Plaintiff asserts that his state law claims are "based on the exact same facts as the [§] 1983 claim," and he contends that King County is vicariously liable for Deputy Baldwin's conduct based upon respondeat superior. Dkt. 28 at 9. Plaintiff also states that, contrary to the defendants' assertion that plaintiff is really alleging "negligent investigation," his state law claims should "NOT [be construed as] a negligence claim." *Id*. at 10.

The tort of conversion is "the act of willfully interfering with any chattel, *without lawful justification*, whereby any person entitled thereto is deprived of the possession of it." *Consulting Overseas Management, Ltd. v. Shtikel*, 105 Wash.App. 80, 83, 18 P.3d 1144 (2001) (emphasis added). By contrast, in any claim for tortious interference with a contractual relationship, a claimant is required to show five elements: (1) existence of valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing breach or termination of relationship or expectancy; (4) that defendants interfered for improper purpose or used improper means; and (5) resultant damage. *See Leingang v. Pierce County Medical Bureau, Inc*., 131 Wash.2d 133, 157, 930 P.2d 288 (1997).

Aside from plaintiff's conclusory assertions, he has failed to provide any evidence that Deputy Baldwin lacked a lawful justification for his "inference" with plaintiff's possession of

his Cadillac or his contract with Mr. Ford. Deputy Baldwin's automobile theft investigation was conducted "within the course and scope of his employment for the King County Sheriff's Department[.]" Dkt. 23 at 1-2 (Baldwin Decl.). Without more, plaintiff has not presented a genuine issue of material fact regarding Deputy Baldwin's liability for conversion or tortious interference with a contractual relationship. As Deputy Baldwin is not liable under either theory, King County cannot be held vicariously liable for his conduct. *See Rahman v. State*, 170 Wash.2d 810, 816, 246 P.3d 182 (2011) (providing that under the theory of respondeat superior, an employer is only liable for the torts of an employee who is acting on the employer's behalf). Accordingly, the defendants' motion for summary judgment on the plaintiff's state law claims is also GRANTED.

V. CONCLUSION

For the reasons discussed above, the Court recommends that the defendants' motion for summary judgment, Dkt. 17, be GRANTED, plaintiff's motion for summary judgment, Dkt. 28, be DENIED, and that this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 1st day of April, 2011.

JAMES P. DONOHUE
United States Magistrate Judge